## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SONYA MULL, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiffs*,<br><br>v.<br><br>FAMILY DOLLAR STORES OF TENNESSEE, LLC, FAMILY DOLLAR SERVICES, LLC, FAMILY DOLLAR INC., and DOLLAR TREE STORES, INC.,<br><br>*Defendants*. | Case No. _____<br>Judge: _____<br><br><u>DEMAND FOR JURY TRIAL</u> |

### <u>CLASS ACTION COMPLAINT</u>

Plaintiff Sonya Mull ("Plaintiff"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this Class Action Complaint against Defendant Family Dollar Stores of Tennessee, LLC; Defendant Family Dollar Services, LLC; Defendant Family Dollar, Inc.; and Defendant Dollar Tree Stores, Inc. (collectively referred to as "Family Dollar" or "Defendants"), and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their counsel as follows:

### <u>PARTIES</u>

1.      Sonya Mull is, and at all relevant times has been, a citizen of the State of Tennessee. Plaintiff purchased Contaminated Products from Family Dollar's Affected Stores in Memphis, Tennessee between January 1, 2021 and February 18, 2022. Plaintiff suffered actual financial loss as a result of her purchase of the Contaminated Products.

2.      Defendant Family Dollar Stores of Tennessee, LLC was incorporated in Virginia

and has its principal place of business at 500 Volvo Pkwy in Chesapeake, Virginia, 23320. It is licensed to do business in Tennessee and can be served via its registered agent Corporation Service Company at 2908 Poston Ave in Nashville, Tennessee 37203-1312.

3.      Defendant Family Dollar Services, LLC was incorporated in North Carolina and has its principal place of business at 500 Volvo Pkwy in Chesapeake, Virginia, 23320. It is licensed to do business in Tennessee and can be served via its registered agent Corporation Service Company at 2908 Poston Ave in Nashville, Tennessee 37203-1312.

4.      Defendant Family Dollar, Inc. is incorporated under the laws of the state of North Carolina with its principal place of business located at 500 Volve Pkwy, Chesapeake, Virginia. Defendant Family Dollar is a wholly owned subsidiary of Defendant Dollar Tree Stores, Inc.

5.      Defendant Dollar Tree Stores, Inc. Defendant Dollar Tree Stores, Inc, is a Virginia corporation with its principal place of business located at 500 Volve Pkwy, Chesapeake, Virginia.

<u>**JURISDICTION AND VENUE**</u>

6.      This Court has general personal jurisdiction over Defendants because Defendants operate in Tennessee and because Defendants advertise, market, and sell the Products in Tennessee, accepts money from purchasers located in Tennessee, has engaged in systematic and continuous business activities in Tennessee, transacted substantial business with Tennessee entities and residents, and generally has sufficient minimum contacts in Tennessee to satisfy the Tennessee Long Arm Statute, T.C.A. § 20-2-214(a).

7.      This Court has specific personal jurisdiction over Defendants arising from the advertising, marketing, and sale of the Contaminated Products in Tennessee, which included or risked including dangerous substances, all of which have caused harm in Tennessee.

8.      This Court has specific personal jurisdiction over Defendants because the advertising, marketing, and sale of the Contaminated Products, which included or risked including dangerous substances, occurred in parts of Tennessee that are located in this District.

9.      Venue is proper in Tennessee pursuant to 28 U.S.C. §1391(b)(2), because Plaintiff resides in this District and ingested and handled the Products at issue within the confines of this District.

10.     Venue is proper in Tennessee under 28 U.S.C. §1391(b)(1) & (2) and 28 USC §1391(d) because Defendants regularly conduct substantial business within this District.

11.     Venue is also proper in Tennessee under 28 U.S.C. §1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this District, namely Defendants' advertisement, sale, and marketing of the Products, which occurred in this District and caused financial harm to members of the putative class that reside in this District.

## FACTUAL ALLEGATIONS

12.     On Friday, February 18, 2022, the U.S. Food and Drug Administration ("FDA") issued a safety information news release titled, "FDA Alerts the Public to Potentially Contaminated Products from Family Dollar Stores in Six States" (the "FDA Safety Alert") after an FDA inspection found unsanitary conditions, including a rodent infestation, that could cause many of the products stored there to become contaminated.[1] A copy of the FDA's Safety Alert is attached hereto as **Exhibit A**.

---

[1] Safety Information News Release, *FDA Alerts the Public to Potentially Contaminated Products from Family Dollar Stores in Six States*, FDA, Feb. 18, 2022, available at: https://www.fda.gov/news-events/press-announcements/fda-alerts-public-potentially-contaminated-products-family-dollar-stores-six-states. (**Exhibit A**).

13.     The impacted products originated from the Family Dollar Distribution Center 202 located at 1800 Family Dollar Pkwy in West Memphis, Arkansas, 72301 (the "West Memphis Distribution Center"). The West Memphis Distribution Center is approximately 850,000 square feet, has approximately 500 employees, and services stores in Arkansas, Louisiana, Texas, Oklahoma, Missouri, Illinois, Kentucky, Tennessee, Georgia, Alabama, and Mississippi.[2] The West Memphis Distribution Center is depicted below:[3]



14.     In early January 2022, Robert Bradford, then a Family Dollar employee at the West Memphis Distribution Center, posted videos and photographs of numerous rats inside the building, some of which were obtained by local news station WREG.[4] Mr. Bradford claims he was fired after posting a video of him trying to feed a rat online and stated the rats were everywhere inside

[2] https://www.familydollar.com/locations/ar/west-memphis/dc202/.
[3] *Id.*
[4] Melissa Moon, *Another complaint about rats at Family Dollar Facilities*, WREG Memphis, Jan. 4, 2022, available at: https://wreg.com/news/local/another-complaint-about-rats-at-family-dollar-facilities/.

the warehouse: "There are sixty-one aisles in the warehouse; you are going to see them from one to sixty-one. They are running around. They are on the floor, and they are in boxes."

15.   Photos captured from Mr. Bradford's video and featured WREG Memphis are below:[5]





---

[5] *Id.*

16.     WREG Memphis and other news outlets have continued to feature videos of rats from inside the West Memphis Distribution Center:[6]





---

[6] *See e.g.* Jordan James, *Over 1,000 dead rodents found at Family Dollar distribution center*, WREG Memphis, Feb. 19, 2022, available at: https://wreg.com/news/local/over-1000-dead-rodents-found-at-family-dollar-distribution-center/.

17.     Around the same time in early January 2022, following a consumer complaint, the FDA began investigating the West Memphis Distribution Center.[7] Shortly after the FDA inspection team's arrival on-site, Family Dollar ceased distribution of products from the West Memphis Distribution Center. The inspection concluded on February 11, 2022.

18.     Seven days later, the inspection findings were described in the FDA Safety Alert:

> Conditions observed during the inspection included *live rodents*, *dead rodents in various states of decay*, *rodent feces and urine, evidence of gnawing, nesting and rodent odors throughout the facility, dead birds and bird droppings, and products stored in conditions that did not protect against contamination*. More than *1,100 dead rodents* were recovered from the facility following a fumigation at the facility in January 2022. Additionally, a review of the company's internal records also indicated the collection of more than *2,300 rodents* between March 29, 2021 and September 17, 2021, demonstrating a history of infestation.

(emphasis added).

19.     "Families rely on stores like Family Dollar for products such as food and medicine. They deserve products that are safe," said Associate Commissioner for Regulatory Affairs Judith McMeekin, Pharm.D.[8] "No one should be subjected to products stored in the kind of unacceptable conditions that we found in this Family Dollar distribution facility. These conditions appear to be violations of federal law that could put families' health at risk. We will continue to work to protect consumers."

20.     According to the FDA, there are numerous hazards associated with rodents including the potential presence of Salmonella.[9] Use or consumption of affected products may present risk of illness due to the potential presence of Salmonella, an organism which can cause

---

[7] Safety Information News Release, *FDA Alerts the Public to Potentially Contaminated Products from Family Dollar Stores in Six States*, FDA, Feb. 18, 2022, available at: https://www.fda.gov/news-events/press-announcements/fda-alerts-public-potentially-contaminated-products-family-dollar-stores-six-states. (**Exhibit A**).
[8] *Id*.
[9] *Id*.

serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems. Healthy persons infected with Salmonella often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with Salmonella can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (i.e., infected aneurysms), endocarditis and arthritis.

21.     Because of the unsanitary conditions, rodent infestation, and related health hazards, the FDA advised that all FDA-regulated products sold by certain Family Dollar stores in Alabama, Arkansas, Louisiana, Mississippi, Missouri and Tennessee from January 1, 2021, through present are not fit for human use or consumption, including:

- **Human foods** (including dietary supplements (vitamin, herbal and mineral supplements));
- **Cosmetics** (skincare products, baby oils, lipsticks, shampoos, baby wipes), animal foods (kibble, pet treats, wild bird seed);
- **Medical devices** (feminine hygiene products, surgical masks, contact lens cleaning solutions, bandages, nasal care products);
- **Over-the-counter** (OTC) medications (pain medications, eye drops, dental products, antacids, other medications for both adults and children); and
- **Any other FDA-regulated products**.[10]

Collectively, these products are referred to as "the Contaminated Products" herein.

22.     The conditions at the West Memphis Distribution Center were such that all products in the categories noted above were deemed contaminated by the FDA, regardless of whether the product packaging showed signs of contact with rodents, birds, or their excrement or the packaging itself actually came into contact with the rodents, birds, or excrement. All of the Contaminated

---

[10] *Id.*

Products were considered dangerous and unfit for human consumption or use due to the manner in which they were stored at the West Memphis Distribution Center.

23.     The FDA Safety Alert warned that anyone who purchased a Contaminated Product and experiences health concerns should contact a health care professional right away.[11] For individuals who still have Contaminated Products in their homes, the FDA advised that these products should be thrown away:

> Consumers are advised not to use and to contact the company regarding impacted products. The agency is also advising that ***all drugs, medical devices, cosmetics, and dietary supplements, regardless of packaging, be discarded. Food in non-permeable packaging (such as undamaged glass or all-metal cans) may be suitable for use if thoroughly cleaned and sanitized***. Consumers should wash their hands immediately after handling any products from the affected Family Dollar stores.[12]

(emphasis added).

24.     After the FDA Safety Alert, Family Dollar issued a "voluntary recall." [13] Family Dollar's Recall Notice is attached hereto as **Exhibit B**.   The Recall Notice advises that "[c]ustomers that may have bought affected product ***may return such product*** to the Family Dollar ***store where they were purchased*** without receipts." Family Dollar's Recall Notice indicates that "[p]roducts shipped directly to the store by the distributor or manufacturer aren't included, such as all frozen and refrigerated items."

---

[11] *Id*.

[12] *Id*.

[13] Press Release, *Family Dollar Stores Issues Voluntary Recall of Certain FDA-Regulated Products in Six States Including Drugs, Devices, Cosmetics, Foods*, Business Wire, Feb. 18, 2022, available at:
https://www.businesswire.com/news/home/20220218005563/en/Family-Dollar-Stores-Issues-Voluntary-Recall-of-Certain-FDA-Regulated-Products-in-Six-States-Including-Drugs-Devices-Cosmetics-Foods. (**Exhibit B**).

25.     In addition to its Recall Notice, Family Dollar was forced to close the 404 stores that received shipments from the West Memphis Distribution Center ("the Affected Stores"):[14]



26.     Family Dollar's List of 404 Affected Stores is attached hereto as **Exhibit C**.

27.     On multiple occasions, Plaintiff purchased Contaminated Products from Store No. 10203 located at 1440 US Hwy 61 N. in Tunica, Mississippi; Store No. 876 located at 2920 Lamar Ave. in Memphis, Tennessee; and Store No. 8691 located at 6550 Mt. Moriah Rd. in Memphis, Tennessee.

28.     Plaintiff and Class Members relied upon representations by Family Dollar concerning the safety and quality of its products.

29.     Plaintiff and Class Members paid money for the Contaminated Products.

---

[14] Vimal Patel, *Rodent Infestation at Family Dollar Warehouse Leads to Hundreds of Closures*, NY Times, Feb. 19, 2022, available at: https://www.nytimes.com/2022/02/19/us/fda-family-dollar-recall.html; Annabelle Timsit, *Family Dollar closes 400 stores, recalls products after FDA finds decaying dead rodents in warehouse*, WA Post, Feb. 20, 2022, available at: https://www.washingtonpost.com/nation/2022/02/20/family-dollar-recall-fda-rodents/;     Parker King, et al., *Hundreds of Family Dollar stores closed due to rodent infestation*, WDTV West Memphis, AK, Feb. 20, 2022, available at: https://www.wdtv.com/2022/02/20/hundreds-family-dollar-stores-closed-due-rodent-infestation/.

30.     The unsanitary condition of the Contaminated Products manifested before the Products were purchased by Plaintiff and Class Members.

31.     The Contaminated Products were defective and unreasonably dangerous at the time they were purchased by Plaintiff and Class Members. No ordinary consumer with ordinary knowledge common to the community would foresee the risks posed by the Contaminated Products and no reasonably prudent manufacturer or seller would market and sell the Contaminated Products.

32.     Because of the multitude of health hazards associated with a rodent infestation, the Contaminated Products are worthless, and Plaintiff and Class Members did not receive any benefit from the Contaminated Products.

33.     Because the Contaminated Products came into contact with other products in Plaintiff and Class Members' homes, Plaintiff and Class Members must discard additional products as well.

34.     Family Dollar unreasonably delayed issuing a recall of the Contaminated Products. Family Dollar has been aware of the problems with the West Memphis Distribution Center since at least September 2021 and the rodent infestation and unsanitary conditions described by the FDA must have been obvious to all those that entered the facility.

35.     There is evidence that Family Dollar was on notice about issues with rats long before September 2021, as Family Dollar has a disturbing history of rat infestations in its stores throughout the country.[15]

---

[15] Michele Reese, *Complaints Lead to Deep Cleaning at Downtown Family Dollar*, WREG Memphis, Jan. 27, 2014, available at: https://wreg.com/news/complaints-lead-to-deep-cleaning-at-downtown-family-dollar/; WRIC Newsroom, *2 local Family Dollar stores shut down to deal with rat infestations after 8News investigation*; WRIC News, June 19, 2018, available at: https://www.wric.com/news/taking-action/2-local-family-dollar-stores-shut-down-to-deal-with-rat-infestations-after-8news-investigation/; Tom Sussi, *Rodent infestation forces Family Dollar*

36.    Additionally, the unsanitary conditions within the West Memphis Distribution Center were immediately obvious to anyone who entered the facility. Defendants were aware of the rodent infestation that led to the contamination of products within the West Memphis Distribution Center.

37.    Hiring cleaning crews, professional exterminators, and fumigation can be expensive and could decrease Defendants' profits or result in the West Memphis Distribution Center being shut down, so Defendants failed to take these steps to address the rodent infestation to maximize profits.

38.    The FDA's inspection report describes a dirty, rat-infested facility where merchandise including human and animal food was stored. The inspectors note that they observed "rodent evidence, including live rodents, dead rodents of various states of decay, rodent excreta pellets ... gnawings, nesting, and odors indicative of rodents throughout the entirety" of the facility.

39.    The FDA's inspection report is attached hereto as **Exhibit D**.

_____

*store to close*, NBC4, Oct. 17, 2018, available at:
https://www.nbc4i.com/news/investigates/up-to-code/rodent-infestation-forces-family-dollar-store-to   close/1531687075/?fb_comment_id=2191038777594942_2191103297588490;   Darcy Spears, *Rats land 2 Family Dollar Stores on Dirty Dining*, KTNV, May 1, 2019, available at: https://www.ktnv.com/dirtydining/rats-land-two-family-dollar-stores-on-dirty-dining;   Sarafina Jones, *Man claims rat infestation at Polk County Family Dollar*, WFLA, Auburndale, Fla., Jun. 17, 2019, available at: https://www.wfla.com/news/polk-county/man-claims-rat-infestation-at-polk-county-family-dollar/2081920910/; Luke Jones, *Inspection report reveals disturbing details about rat infestation at Family Dollar store*, WREG Memphis, Jul. 23, 2019, available at: https://wreg.com/news/inspection-report-reveals-disturbing-details-about-rat-infestation-at-family-dollar-store/; Sierra Webster, *Rat Infestation Shuts Down Family Dollar in Cobb County,* The Atlanta Journal Constitution, July 29, 2019, available at: https://www.ajc.com/news/breaking-news/rat-infestation-shuts-down-family-dollar-cobb-county/5ZADCF7OcO9lRL4FQ87LAI/; Bria Jones, *Family Dollar worker says store infested with rats*, WREG Memphis, Jan. 3, 2022, available at:
https://wreg.com/news/local/family-dollar-worker-says-store-infested-with-rats/#:~:text=In%20these%20photos%20you%20can,at%204100%20South%20Plaza%20Drive.&text=The%20employee%20who%20wants%20to,store%20through%20shipments%20dropped%20off.?ipid=promo-link-block1.

40.     The FDA report indicates that Defendants have been aware of the rodent problem since **at least January 2020**. The general manager told inspectors that when there was a fire drill in October, "dozens of rats could be seen running around the facility due to the loud and sustained sound of the fire alarm," the report said. Because the stench from the rodents was so bad in one part of the facility, the company even stopped using a breakroom and an inventory control center, the report said.

41.     The FDA inspected the facility on more than one occasion in January and February. Its findings included:

·     Rodent droppings "too numerous to count ... on the floor of the north end of the shipping dock where product, including food, is stored" and in several areas throughout the facility;

·     The ceiling tile and carpeting had to be removed in October 2021 from an office "due to the odor in the rooms" from the rodents. The report said that there was still a "putrid odor permeating the now cleared out room;"

·     Several dead mice and rats, in addition to droppings too numerous to count;

·     "Multiple (no less than 5) rats climbing up rack scaffolding and through a pallet containing potato chips" in an area that had a "strong odor of rodent excreta and urine;"

·     Inspectors watched as "two mice exited from gnawed-open product bags;"

·     Pallets with food that had "significant nesting material" under them;

·     A "distinct odor indicating a dead/decaying animal" in the unused conveyer belt system;

·     "Significant gnawings" in addition to "too numerous to count" rat droppings and a "strong odor of rodent urine" on a pallet of mixed nuts. "Multiple bags of products were gnawed open and product was spilling out of cases onto lower levels of the pallet;"

·     Pet and human food that was improperly stored and had gnaw-holes and rat droppings;

·     Rotting garbage that could be smelled from 5 feet away;

· Trash that "was piled up to 1.5 feet tall and extended up to 2 feet out from the facility's walls;"

· Bird droppings that covered an area of the floor 1.5 feet wide and 3 feet long; and

· At least two dead birds.

42.     The FDA's examination of pest control records documented:

· Up to 107 mice from 2020 through June 2021 and up to 31 roof rats in areas that included food storage;

· The company's bait boxes and glue traps captured 2,300 rodents between March and September 2021 alone;

· During January 7-12, 2022, 150 roof rats were captured;

· After fumigation during January 16-20, 2022, about 1,097 rodent carcasses were removed from the facility.

43.     Additional photos obtained from a confidential witness depicting conditions inside the West Memphis Distribution Center are attached hereto as **Exhibit E**.

44.     Family Dollar concealed the truth about the conditions of the West Memphis Distribution Center in order to remain operational and continue to sell Contaminated Products but failed to take reasonable steps to remedy the rodent infestation. As a result, consumers continued purchasing Contaminated Products.

45.     Even after an extraordinary delay, Plaintiff and Class Members are not aided by Family Dollar's recall for three reasons:

a.  Family Dollar requires customers to return the Contaminated Products to receive a refund, even though the FDA Safety Alert advised customers to immediately throw away the Contaminated Products.

b.  Family Dollar requires customers to return the Contaminated Products to the "store where they were purchased," even though, as of filing, the Affected Stores are closed.

c. Family Dollar does not include "products shipped directly to the store by the distributor or manufacturer" in the recall but does not specify which products are included in this category.

## CLASS ACTION ALLEGATIONS

46.     **Class Definition**: Plaintiff brings this action pursuant to Tenn. R. Civ. P. 23, on behalf of themselves and a class of similarly situated individuals ("the Class"), defined as follows:

All persons who were or are citizens of the State of Tennessee who, from January 1, 2021, through February 18, 2022, purchased one of the Contaminated Products for household or business use, from a Family Dollar Affected Store in Tennessee.

Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

47.     Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose subclasses, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

48.     **Numerosity**: Upon information and belief, the Class is comprised of tens of thousands of members. Thus, the Class is so numerous that joinder of all members is impracticable. Class Members can easily be identified through records of Family Dollar, or by other means.

49.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and Class Members, which predominate over any individual issues, including:

a. Whether Defendants' conduct constitutes a breach of implied warranty;

b. Whether Defendants' conduct constitutes a breach of the Tennessee;

c. The appropriate class-wide measure of damages;

15

d.   Whether Defendants are liable for attorneys' fees and costs.

50.   **Typicality**: Plaintiff's claims are typical of the claims of members of the Class. All claims are based on the same legal and factual issues. Plaintiff and each of the Class Members purchased Contaminated Products from one or more of Family Dollar's Affected Stores. Defendants' conduct was uniform to Plaintiff and all Class Members.

51.   **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of any members of the Class, and Defendants have no defenses unique to Plaintiff. The questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the Class.

52.   **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
Breach of Implied Warranty of Merchantability, Tenn. Code Ann. § 47-2-314, *et seq.*
(On behalf of Plaintiff and the Class)

53.   Plaintiff incorporates by reference all of the above allegations as if set forth herein.

54.   Defendants are merchants.

55.   Defendants provided Plaintiff and Class with an implied warranty that the Contaminated Products were merchantable and fit for the ordinary purposes for which they were sold.

16

56.     Contrary to the applicable implied warranties, the Contaminated Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose. Instead, the Contaminated Products are defective, as described more fully above.

57.     Defendants were on notice of the condition of the Contaminated Products.

58.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Negligence
(On behalf of Plaintiff and the Class)

59.     Plaintiff incorporates by reference all of the above allegations as if set forth herein.

60.     Defendants owed a duty to Plaintiff and the Class to exercise reasonable care in the sale, quality control and marketing of the Contaminated Products.

61.     Defendants breached its duty to Plaintiff and the Class by marketing, selling, advertising and warranting the defective Contaminated Products (which contain or have a risk of containing Salmonella or other infectious diseases) to Plaintiff and the Class, and by failing to take those steps necessary to discontinue selling the Contaminated Products to consumers.

62.     Defendants were aware, or reasonably should have been aware, that the Contaminated Products were harmful and did not perform their intended use.

63.     When they purchased the Contaminated Products, Plaintiff and the Class were unaware of their unsafe and dangerous nature.

64.     As a direct and proximate cause of the foregoing, Plaintiff and the Class have suffered and will continue to suffer damages and economic loss described fully above.

65.     Plaintiff and the Class is entitled to damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment

(On behalf of Plaintiff and the Class)

66.     Plaintiff incorporates by reference all of the above allegations as if set forth herein.

67.     Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Contaminated Products.

68.     Defendants knowingly and willingly accepted and enjoyed these benefits.

69.     Defendants either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Contaminated Products would have the qualities, characteristics, ingredients, and suitability for use represented and warranted by Defendants. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

70.     Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

71.     Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

### FOURTH CLAIM FOR RELIEF
Fraudulent Concealment
(On behalf of Plaintiff and the Class)

72.     Plaintiff incorporates by reference all of the above allegations as if set forth herein.

73.     from January 1, 2021, through February 18, 2022, Defendants knowingly, fraudulently, and actively misrepresented, omitted and concealed from consumers material facts relating to the quality of its Contaminated Products.

74.     The conditions within the West Memphis Distribution Center were known to Defendants and were immediately obvious and apparent to anyone who set foot within the facility.

75.     Defendants have a duty to disclose to Plaintiff and the Class the actual quality of its Contaminated Products which contain or have a risk of containing Salmonella or other infectious diseases.

76.     The misrepresentations, omissions and concealments complained of herein were material and were made on a uniform and market-wide basis. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiff and the Class have been damaged, as alleged herein.

77.     Plaintiff and the Class reasonably and actually relied upon Defendants' representations, omissions and concealments. Such reliance may also be imputed, based upon the materiality of Defendants' wrongful conduct.

78.     Based on such reliance, Plaintiff and the Class purchased Contaminated Products and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be prove at trial.

### FIFTH CLAIM FOR RELIEF
Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, et seq.
(On behalf of Plaintiff)

79.     Plaintiff incorporates by reference all of the above allegations as if set forth herein.

80.     Plaintiff is a "natural person" and "consumer" within the meaning of Tenn. Code Ann. § 47-18-103(2).

81.     Defendants are "person(s)" within the meaning of Tenn. Code. Ann. § 47-18-103(2).

82.     Defendants' conduct described herein affected "trade," or "commerce" or "consumer transactions" within the meaning of Tenn. Code. Ann. § 47-18-103(19).

83.     By failing to disclose and concealing the defective nature of the Contaminated Products from Plaintiff and prospective Class Members, Defendants violated the Tennessee Consumer Protection Act by: (1) "Representing that goods or services have… characteristic, [or] … benefits …. that they do not have ….;" (2) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" and (3) "Advertising goods or services with intent not to sell them as advertised." Tenn. Code. Ann. § 47 18-104.

84.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

85.     Defendants knew that the Contaminated Products suffered from an inherent defect due to the manner in which they were handled and stored, that the Contaminated Products were not suitable for human consumption, and that the Contaminated Products were worthless.

86.     The facts concealed or not disclosed by Defendants to Plaintiff are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Contaminated Products. Had Plaintiff known that the Contaminated Products had been stored in unsanitary conditions, she would never have purchased them.

87.     As a result of Defendants' misconduct, Plaintiff and the other Class Members have suffered actual damages in that the Contaminated Products are worthless and must be discarded and replaced.

88.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff has suffered and will continue to suffer actual damages.

89.     Accordingly, Plaintiff seeks actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under Tenn. Code. Ann. § 47-18-109(a), *et seq*, due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Class Action Complaint, pray for judgment and relief against Defendants as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Tennessee Rules of Civil Procedure on behalf of the proposed Class described herein; and (ii) appointing Plaintiff to serve as representatives for the Class and Plaintiff's counsel to serve as Class Counsel;

b)  For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c)  For an order awarding restitution of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

d)  For an order requiring disgorgement of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

e)  For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f)  For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g)  For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.


DATED: May 2, 2022                          Respectfully submitted,

                                            By:*/s/  J. Gerard Stranch, IV*
                                            J. Gerard Stranch, IV (BPR #023045)
                                            Michael G. Stewart (BPR #016920)
                                            Benjamin A. Gastel (BPR #028699)
                                            Janna L. Maples (BPR #032612)
                                            **BRANSTETTER, STRANCH**
                                            **  & JENNINGS, PLLC**
                                            The Freedom Center
                                            223 Rosa L. Parks Avenue, Suite 200
                                            Nashville, TN  37203
                                            Telephone: (615) 254-8801
                                            Facsimile: (615) 255-5419
                                            gerards@bsjfirm.com
                                            mikes@bsjfirm.com
                                            beng@bsjfirm.com
                                            jannam@bsjfirm.com

                                            *ATTORNEYS FOR PLAINTIFF*